UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TROY J. BINGENHEIMER,

        Plaintiff,

        v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

Civil No. 05-6311-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Plaintiff Troy J. Bingenheimer brings this action for judicial review of a final decision from defendant Commissioner denying plaintiff's application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) payments. Plaintiff first filed an application for these benefits on December 21, 2000. This application was denied on April 4, 2001. Plaintiff did not seek an appeal of this denial.

1  - OPINION AND ORDER

Plaintiff filed a new application for DIB and SSI on January 17, 2003. This application was also denied initially. Plaintiff sought reconsideration, and benefits were again denied.

Plaintiff requested a hearing before an Administrative Law Judge (ALJ). The ALJ issued a ruling concluding that plaintiff was not entitled to benefits.

This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff subsequently filed a Complaint seeking this court's judicial review.

## **LEGAL STANDARDS**

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude SGA.  20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

4  - OPINION AND ORDER

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since February 18, 2000. Transcript of Record (hereinafter "Tr.") 27, Finding 1.

At step two, the ALJ found that plaintiff had severe physical impairments including lumbar spondylosis, degenerative disc disease and depression. Tr. 27, Finding 2.

At step three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. *Id.*

At step four, the ALJ found that plaintiff is unable to perform his past relevant work. Tr. 27, Finding 5. The ALJ so found after determining that plaintiff has a RFC to perform a limited range of light exertion work. Tr. 27, Finding 3.

At step five, based in part upon the testimony of a Vocational Expert (VE), the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy. Tr. 27, Finding 8; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## FACTS

The relevant background has been presented thoroughly by the parties and in the ALJ's decision, and is summarized here. Plaintiff was thirty-eight years of age at the time of his hearing before the ALJ. He has some work experience, including employment in 2001, after his alleged disability onset date. Because plaintiff and his attorney failed to initiate any request to

amend his alleged onset date, and instead reported explicitly to the ALJ that plaintiff's onset date remained February 18, 2000 (Tr. 410), plaintiff's employment in 2001 could have been a more significant issue. However, the ALJ concluded that the Social Security Administration had determined that plaintiff's 2001 employment should be construed as unsuccessful work attempts. Tr. 16.

Plaintiff suffers back pain and other assorted impairments. The ALJ reviewed plaintiff's medical issues carefully, and specific medical facts and background will be addressed as necessary in conjunction with the parties' remaining legal arguments.

## QUESTIONS PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits primarily due to the following alleged errors by the ALJ: (1) failing to amend plaintiff's alleged onset date; (2) failing to properly address medical evidence and plaintiff's testimony; (3) failing to elicit proper expert testimony from the VE; and (4) failing to evaluate witness testimony properly. This court has examined each of plaintiff's arguments, and concludes that they are without merit.

## DISCUSSION

At the outset of this analysis, this court rejects plaintiff's arguments about whether the ALJ employed the wrong disability onset date. Plaintiff contends that the ALJ failed to consider "whether plaintiff first became disabled subsequent to his alleged disability onset date" and ignored "probative evidence showing [that] plaintiff's conditioned [sic] worsened in September 2002." Pl.s Opening Brief at 11. While counsel contends that the "alleged onset date was never changed to recognize plaintiff's successful return to work" in 2001, Opening Brief at 12, no

plausible explanation is offered as to why counsel asserts this after reporting to the ALJ at plaintiff's hearing that plaintiff's onset date should remain as alleged originally, February 18, 2000. Tr. 410. Counsel's contention in a footnote that he would have amended the onset date "had a 'reopening' issue been asserted" in plaintiff's Notice of Hearing, Opening Brief at 12, n.4, misplaces upon whom the responsibility rests for preparing, presenting and advocating an application for DIB. The ALJ's conclusion to proceed with the onset date that was asserted in plaintiff's application and also confirmed by plaintiff's counsel was appropriate. Construing plaintiff's employment in 2001 as unsuccessful work attempts is not shown to be an error entitling plaintiff to remand. In light of the ALJ's careful and thorough analysis of plaintiff's medical record, discussed below, plaintiff's complaints regarding the onset date and the ALJ's consideration of evidence regarding plaintiff's worsening condition are rejected as lacking any merit.

Plaintiff next contends that the ALJ erred by mis-characterizing the opinions and treatment records developed b Dr. Jeffrey Wang, M.D., one of plaintiff's treating physicians. Opening Brief at 14. Relatedly, plaintiff asserts that the ALJ failed to accord "controlling weight" to Dr. Wang's opinions. Opening Brief at 15.

While clear and convincing reasons are required to reject an examining physician's uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion that is contradicted by another physician. *Andrews*, 53 F.3d at 1041. Also, an ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

7   - OPINION AND ORDER

The ALJ performed a thorough analysis of the medical evidence.  He acknowledged that plaintiff suffers from back pain, for which he has sought extensive treatment and obtained only moderate relief, and from other severe and non-severe impairments.  Tr. 17-24.  The ALJ concluded that plaintiff has the RFC to "perform a limited range of light exertion work," lifting no more than twenty pounds occasionally and no more than ten pounds frequently, with additional limitations including "a need to sit and stand at will, no walking on uneven ground, and occasional bending, stooping, kneeling, crouching, or crawling," no overhead reaching, and performing "only simple 1-2-3-step work processes."  Tr. 22.

In so concluding, the ALJ evaluated plaintiff's testimony and the testimony of lay witnesses, discussed below, and distinguished Dr. Wang's reports made prior to a leg injury suffered while attempting work in 2001 from the doctor's reports submitted after that injury.  Tr. 23-25.  The ALJ also evaluated non-examining sources of record, including the opinions of medical consultants.  Tr. 25.  The ALJ made specific references to plaintiff's statements during examinations, diagnostic x-rays and the reports that accompanied them at the time they were taken, and instances in which plaintiff was medically released to attempt work activity.  The ALJ repeatedly cited examples in the medical record where the evidence of plaintiff's medical condition varied and/or fell short of establishing a basis for assigning limitations to plaintiff greater than those recognized by the ALJ.  Tr. 18-20, 24-25.   Contrary to plaintiff's contentions, there are no grounds for concluding that medical evidence has been characterized unfairly or inaccurately.

Similarly, the assertion that the ALJ failed to accord proper weight to Dr. Wang's opinions is without merit.  The ALJ acknowledged his duties in this regard, recognizing the

significance accorded to treating physicians, Tr. 24, and the consideration to be given to medical reports, Tr. 25. This court has reviewed the ALJ's analysis. The court concludes that the ALJ considered the medical opinions of record properly and did not err in his evaluation of them. The ALJ set forth adequate reasons for the evaluation of opinions proffered by Dr. Wang and each of the other medical personnel who opined that plaintiff might have significant impairments that precluded employment.

Plaintiff also challenges the ALJ's evaluation of plaintiff's testimony. Plaintiff asserts that the ALJ failed to assess plaintiff's credibility adequately.

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citation and quotation omitted).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the *Cotton* test, and

there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Bunnell*, 947 F.2d at 347-48).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects

10 - OPINION AND ORDER

of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. In determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id*. (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

An ALJ may also consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ examined the relevant medical reports extensively before concluding that plaintiff's testimony regarding the impact of his impairments was contradicted by medical evidence. The ALJ acknowledged that plaintiff alleged that he was unable to work, Tr. 24, and plaintiff produced some objective medical evidence regarding his alleged impairments.

11 - OPINION AND ORDER

However, the ALJ also referred to clear and convincing evidence in the record supporting the ALJ's ultimate conclusion that plaintiff was not entirely credible. The ALJ cited inconsistencies between plaintiff's presentations and a variety of evidentiary points in the record, including the evaluations plaintiff provided after his 2001 surgery, the extensive work plaintiff performed in 2001, the absence of medically determinable bases for the physical changes plaintiff alleged after a 2001 leg injury, and plaintiff's medical release to attempt part-time work. Tr. 23-24.

This evidence cast doubt upon plaintiff's RFC-related testimony because plaintiff's reporting regarding his limitations was inconsistent with other evidence presented in the record and was unsupported in the medical evidence. These kinds of contradictions between testimony and relevant medical evidence, and specifically comparing a claimed impairment against the absence of appropriate medical treatment for that impairment, can constitute clear and convincing reasons to reject a claimant's subjective testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1433-1434 (9th Cir. 1995).

This court concludes that plaintiff's credibility was evaluated properly in light of the lack of medical evidence to support the severity of limitations he claimed, and given the number of inconsistencies between the record and plaintiff's statements and testimony. The ALJ offered clear and convincing reasons for rejecting plaintiff's allegation of disability, and these reasons are supported by substantial evidence.

Next, plaintiff contends that the ALJ erred in his reliance upon the VE's testimony. As noted above, a claimant bears the initial burden of establishing his or her disability as to each of the steps one through four. If the claimant is unable to perform work that he or she has

performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  *See* 20 C.F.R. § 404.1512(c).

As established above, this court has reviewed the ALJ's analysis of the relevant medical evidence and of plaintiff's RFC and concludes that the analysis is supported by substantial evidence.  Similarly, the hypothetical questioning presented to the VE, and the ALJ's subsequent interpretation of the testimony elicited from the VE, was proper.  The hypothetical questioning submitted to the VE was consistent with the objective medical evidence.

Plaintiff argues that the jobs identified by the VE are inapplicable to plaintiff because they are inconsistent with the limitation recognized by the ALJ of performing only simple 1-2-3-step work processes.  *See* Tr. 437, 22.  The jobs the VE identified as being suitable for plaintiff are listed in the Dictionary of Occupational Titles (DOT) as rated as "level two" for "specific vocational preparedness" (SVP).  Plaintiff argues that "level two" jobs are not simple.

Under the relevant sections of the DOT, "level two" reasoning requires the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and also dealing with problems "involving a few concrete variables in or from standardized situations."  DOT, Appendix C.  Jobs requiring "level two" reasoning are appropriate for claimants who are limited to work involving "simple, routine, repetitive, concrete, tangible tasks."  *Flaherty v. Halter*, 182 F. Supp.2d 824, 850 (D. Minn. 2001) (although the DOT definition states that level two jobs require the ability to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved and not require a high level of reasoning).

13 - OPINION AND ORDER

This court concludes that VE's testimony did not contradict the limitations presented by the ALJ, and that the DOT definitions, properly considered, fail to invalidate such testimony. Plaintiff's objections in this regard are therefore overruled.

Plaintiff's final objection is that the ALJ erred in evaluating the lay testimony presented. An ALJ need only give germane reasons to reject lay witness testimony. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Smolen*, 80 F.3d at 1288. Plaintiff argues that the ALJ erred by improperly rejecting the statements of plaintiff's friends and relatives. To the contrary, the ALJ carefully reviewed testimony from plaintiff's step-father, a questionnaire submitted by plaintiff's girlfriend, a letter submitted by plaintiff's mother, and letters submitted by three other acquaintances. Tr. 22-25. The ALJ concluded that this evidence supported plaintiff's allegations and were credible, but were unreliable indicators of the scope of work activity plaintiff can perform and had limited value in determining how plaintiff's impairments impact this capacity. Tr. 25. The ALJ committed no error in crediting this kind of evidence as he did and determining that the evidence was not dispositive as to the question of plaintiff's alleged inability to work.

## CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Troy J. Bingenheimer's applications for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this  1  day of February, 2007.

      /s/ ANCER L. HAGGERTY
      ANCER L. HAGGERTY
      United States District Judge